# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No.: 1:24-cv-20367-WILLIAMS/GOODMAN

DEBORAH HAGGERTY,

        Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,
a Foreign Profit Corporation,

        Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS

In this maritime personal injury action, Defendant Carnival Corporation ("Defendant" or "Carnival") filed a Motion to Dismiss Plaintiff Deborah Haggerty's ("Plaintiff" or "Haggerty") Complaint [ECF No. 1]. [ECF No. 12]. Plaintiff filed a response in opposition, [ECF No. 14] but Defendant did not file an optional reply, and the time to do so has passed. The dismissal motion is, therefore, ripe. United States District Judge Kathleen M. Williams referred the motion to the Undersigned. [ECF No. 13].

For the reasons stated below, the Undersigned **respectfully recommends** that United States District Kathleen M. Williams **deny** Defendant's motion to dismiss the 37-

page Complaint.

## I.    Background

Plaintiff filed suit against Defendant for damages related to physical injuries she allegedly sustained while aboard one of Defendant's ships, the *Elation.* [ECF No. 1]. Defendant filed the motion to dismiss because it says the Complaint "is riddled with speculative, conclusory statements, and lacks sufficient factual allegations to survive a motion to dismiss," which means the allegations "fall short of the federal pleading standard." [ECF No. 12, p. 2].

Plaintiff's Complaint alleges that her February 27, 2023 trip and fall occurred while she was a passenger aboard the *Elation*, on the carpeted ramp next to the glass door used to access Deck 10 from the interior of Deck 9. Haggerty says "she tripped and fell on an undetectable incline and/or sloped carpeted area while she was attempting to access a door which led to the exterior deck area on Deck 10." [ECF No. 1, ¶ 15].

Haggerty's Complaint contains more-specific allegations about the events immediately before the trip and fall:

> Shortly before this incident, HAGGERTY and her husband were on Deck 9. They took an interior stairwell which led to Deck 10. HAGGERTY's husband went up the stairwell ahead of her and reached the landing, walkway and doorway before her. Once she reached the top of the stairs, HAGGERTY started to walk across a carpeted walkway which led to a glass doorway that led to the open deck. While HAGGERTY started to walk towards the door, her husband had already passed through the walkway and was through the glass doorway. While walking to this door, there was an undetectable inclined sloped area within the walkway immediately before the glass door. The hidden slope within the walkway was carpeted

2

with the same material as the surrounding flooring which includes the walkway that led from the stairwell to the door.

While walking at a normal pace and while paying attention to where she was going, HAGGERTY's right foot caught on the hidden incline/slope within the walkway. This hidden slope caused HAGGERTY to trip and fall. While falling forward, HAGGERTY smashed her right shoulder hit into the frame of the door and ultimately fall down onto the ground. The hidden carpeted slope which caused HAGGERTY to trip and fall, caused her to suffer injuries including but not limited to fracture her right humerus in her shoulder. HAGGERTY promptly reported the incident and her injuries to CCL[1].

*Id*.

The Complaint contains eight counts: Negligent Failure to Maintain, Direct Liability Theory of Negligence, (Count I); Active Negligence of Carnival Crewmembers, Vicarious Liability/*Respondeat Superior* Theory of Negligence, (Count II); Negligent Failure to Warn, Direct Liability Theory of Negligence, (Count III); Negligent Failure to Warn, Vicarious Liability/*Respondeat Superior* Theory of Negligence, (Count IV); Negligent Training of Personnel, Direct Liability Theory of Negligence, (Count V); Negligent Training of Personnel, Vicarious Liability/*Respondeat Superior* Theory of Negligence, (Count VI)[2]; Negligent Design, Construction and Selection of Materials, Direct Liability Theory of Negligence, (Count VII); and Negligent Design, Construction

---

[1]    Plaintiff's Complaint labels Defendant as CCL, Carnival Cruise Lines.

[2]    Carnival mistakenly designated this as a second Count V. The Undersigned will use the actual number of this count (*i.e.*, Count VI), rather than the one incorrectly designated in the Complaint.

3

and Selection of Materials, Vicarious Liability/*Respondeat Superior* Theory of Negligence, (Count VIII). The Complaint includes a paragraph, entitled "Notice Is Not Required For Employee Negligent Acts," in each count based on vicarious liability (*i.e.*, Counts II, IV, VI, and VIII). Those vicarious liability counts do not name a specific Carnival employee or agent who was allegedly negligent, however. Those counts all refer to the active negligence of Carnival's "crew" or its "crewmembers," but Count VIII also (in addition to the "crew" reference) refers to "employees" (who were allegedly "negligent in approving, designing, constructing, and/or selecting the materials for subject area including the subject sloped, uneven walkway on board the CCL *Elation*").

In its dismissal motion (in which it seeks dismissal without leave to amend), Carnival contends that Plaintiff's allegations supporting the direct liability counts are "largely conclusory and speculative statements, that fail to allege sufficient facts which demonstrate that Defendant was **on notice** in order to impose liability." (emphasis supplied). It also argues that Plaintiff failed to establish both how her proffered similar prior incidents put Carnival on notice, and how those prior incidents have an apparent connection to the incident. Moreover, Carnival challenges the sufficiency of Plaintiff's allegation that notice of the dangerous condition is shown by the length of time that the condition existed, noting that she failed to provide specific facts about the condition's duration to indicate that the condition had been present for a sufficient period of time.

Carnival's motion also contends that the industry standards mentioned in the

Complaint are unsuccessful because Plaintiff did not identify which standards are mandatory (as opposed to being mere recommendations). Likewise, Carnival says that Plaintiff never demonstrated how Carnival supposedly deviated from these regulations or how the standards should have put it on notice in the first place. It further argues that some of the standards are wholly inapplicable and therefore irrelevant.

Concerning Count V, Carnival contends that Plaintiff did not specify which training program it was negligent in implementing or operating and how Carnival's alleged negligence in implementing or operating the training program caused Haggerty harm.

Carnival's dismissal motion also contends that Count VII's negligent design theory is inadequate because it lacks specific facts to support conclusory and boilerplate allegations. And Carnival argues that Count VIII's vicarious liability theories (including the one for negligent design) are "nothing more than disguised claims sounding in direct liability seeking to circumvent the notice requirement established by the Eleventh Circuit." [ECF No. 12, p. 13]. Moreover, according to Carnival, Plaintiff is required to (but did not) "identify a specific crewmember, acting within the scope of employment, whose negligence caused the plaintiff's injury." *Id*. at 15 (citing *Holland v. Carnival Corp*., 50 F. 4th 1088, 1094 (11th Cir. 2022)).

Plaintiff, of course, opposes the motion, and she filed a response. [ECF No. 14]. At bottom, her overarching theme is that she is "not required to adduce detailed facts that

are obviously beyond the [p]laintiff's ability to uncover at this early stage of litigation." *Id*. at 1. Plaintiff emphasizes that she is pursuing claims of both direct and vicarious liability and acknowledges that she "may not ultimately prove the crewmembers' negligence" but contends that she "is allowed to assert vicarious liability claims against Carnival." *Id*. at 11-12.

Haggerty also rejects the notion that she must identify specific crewmembers in her Complaint, pointing to case law authority holding that it would seem fundamentally unfair to require a plaintiff to remember the names of all crewmembers involved in the incident and list them in the Complaint. She also contends that all the counts are adequately pled.

## II.  Legal Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). To state a claim for relief, a pleading must contain: "(1) a short plain statement of the grounds for the court's jurisdiction[;] . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8(a). Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III.   Analysis

"Personal-injury claims by cruise ship passengers, complaining of injuries suffered at sea, are within the admiralty jurisdiction of the district courts." *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1365 (11th Cir. 2018) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587–88, 111 S. Ct. 1522, 1524, 113 L. Ed. 2d 622 (1991)). "Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir. 1989)).

"In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Van Deventer v. NCL Corp. Ltd.*, No. 23-CV-23584, 2024 WL 836796, at *4 (S.D. Fla. Feb. 28, 2024) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336).

The duty of care owed by the owner of a ship in navigable waters, while its passengers are on board the vessel, is a duty of exercising reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). Additionally, under general maritime law, "a cruise line owes its passengers a duty to warn of known dangers

beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro*, 693 F.3d at 1336; *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985); *Carmouche v. Carnival Corp.*, No. 13-62584-CV, 2014 WL 12580521, at *5 (S.D. Fla. May 15, 2014); *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1340 (S.D. Fla. 2016).

In order to impose direct liability against a cruise ship for personal injuries sustained while aboard the ship, as a prerequisite to imposing liability, the carrier must have actual or constructive notice of the risk-creating condition." *See Thompson*, 174 F. Supp. 3d at 1340 (quoting *Keefe*, 867 F.2d at 1322). *See generally Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1167 (11th Cir. 2021) ("[P]assenger cannot succeed on a maritime negligence claim against a shipowner unless that shipowner had actual or constructive notice of a risk-creating condition.").

But a cruise passenger plaintiff need not establish actual or constructive notice by the cruise ship operator of a risk-creating condition when the claim is based on *vicarious* liability (*i.e.,* negligence by specific cruise ship crew members, employees or other agents, acting within the scope of their employment). *Yusko*, 4 F.4th at 1169-1170.

Actual notice exists when the defendant knows about the dangerous condition. *See Holland*, 50 F.4th at 1095 (citing *Keefe*, 867 F.2d at 1322; *Guevara*, 920 F.3d at 720). Constructive notice exists where "the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite

corrective measures." *Id.* (*citing Keefe*, 867 F.2d at 1322). A plaintiff can establish constructive notice by alleging "that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Id*. (citing *Guevara,* 920 F.3d at 720 (alteration in original) (quoting *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 65 (2d Cir. 1988))). A plaintiff can also establish constructive notice by alleging "substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988)).

<u>*Sufficient Notice for Direct Liability Counts*</u>

For Haggerty's direct negligence claims (Counts I, III, V, and VII), Carnival contends that the Complaint does not allege sufficient facts demonstrating that it was on notice of the risk-creating condition. Carnival relies heavily on *Holland,* where an appellate court panel noted that most of the plaintiff's factual allegations to prove notice were conclusory and "[s]imply put, [plaintiff's] allegations [did] not cross the line from possibility to plausibility of entitlement to relief." 50 F. 4th at 1096. As such, if the risk-creating condition existed for a sufficient period of time or where substantially similar prior incidents are adequately alleged, then constructive notice may be established; however, mere speculation and recitation of legal conclusions without accompanying factual support fail to meet the federal pleading standard. *Id.* at 1096-97.

Carnival also relies on *Newbauer v. Carnival Corp.*, 26 F.4th 931, 936 (11th Cir. 2022), where the court affirmed an order dismissing a complaint without first giving the plaintiff an opportunity to amend. In *Newbauer*, the plaintiff asserted claims for negligent failure to maintain and negligent failure to warn. Those claims arose from allegations that the plaintiff slipped on a liquid, or a wet, slippery transitory substance which was located in a high traffic dining area which "had existed for a sufficient period of time before [her] fall" such that Carnival had actual or constructive knowledge of its presence and the opportunity to correct or warn about the hazard. *Id.* at 936. The plaintiff also alleged that Carnival had actual or constructive knowledge of the substance because of "the regularly and frequently recurring nature of the hazard in that area." *Id.*

The *Newbauer* Court held that the plaintiff failed to include any factual allegations sufficient enough to satisfy the *Iqbal* and *Twombly* pleading standards such that it was not facially plausible (based on the complaint) that Carnival had actual or constructive notice of the dangerous condition. *Id.* at 935. The *Newbauer* Court explained that the plaintiff did not provide any factual allegations supporting the notion that the area's high traffic gave Carnival the requisite notice. This same omission doomed the plaintiff's allegations that the wet or slippery substance had existed for a long enough time for Carnival to have had notice, that the hazard was regularly and frequently recurring, and that there may have been employees in the area who observed the hazard but failed to take corrective action.

Here, Plaintiff alleges that the walkways are frequently used, and she speculates that they might be used "hundreds if not thousands of times per year." [ECF No. 1, ¶ 18]. But the mere fact that walkways are frequently used does not mean that the alleged danger existed for a long enough time to generate constructive notice. In fact, the *Newbauer* Court rejected that approach when it affirmed an order dismissing a similar claim based on similar allegations of a fall occurring in a high-traffic area.

Likewise, the trial court in *Holland*, which was affirmed, explained that

> As plead, it is impossible for the Court to tell if the hazardous condition the Plaintiff complains of was present for five second, five minutes, or five hours. While the Plaintiff's complaint makes clear it is possible that Carnival was on notice, the Plaintiff's complaint does not state a claim that is plausible on its face sufficient to survive a motion to dismiss.

*Holland v. Carnival Corp.*, No. 20-21789-CIV, 2021 WL 86877, at *3 (S.D. Fla. Jan. 11, 2021) (citing *Road Space Media, LLC v. Miami Dade Cty.*, No. 19-21971-Civ, 2020 WL 434929, at *4 (S.D. Fla. Jan. 28, 2020)), *aff'd*, 50 F.4th 1088 (11th Cir. 2022). The same uncertainty plagues the instant Complaint. The Undersigned therefore agrees that this theory of constructive notice is, as pled, inadequate.

Plaintiff's response highlights allegations concerning training and procedures. Specifically, the Complaint alleges that Carnival "specifically trains crew members to place written warning signs, markers, verbal warning and/or other indicators to warn passengers of its uneven and/or sloped walkways." [ECF No. 1, ¶ 19]. The Complaint likewise alleges that

> CCL's training and procedures instruct crew members that its walkways, including walkway areas that can be uneven and/or sloped which can cause passengers to slip and/or trip and fall and stumble and/or lose balance and fall and get injured. CCL created this procedure for its crew because CCL knows that without verbal, written and/or visual warnings or cues passengers may not be able to appreciate the irregularities of its common walkways.

*Id*.

Carnival highlights the fact that Plaintiff's Complaint does not specify any particular policy that places it on notice of the subject walkway's alleged dangerous condition. According to Carnival, Plaintiff "is attempting to argue that because Defendant has policies and procedures in place then it is automatically on notice of any possible allegedly dangerous condition." [ECF No. 12, p. 8].

Although Plaintiff has not pinpointed a specific policy number or name, she has alleged, in a relatively comprehensive way, what the supposed policies address. If Carnival does in fact have those specific policies and if they apply to the sloped walkway here, then this would help Plaintiff establish constructive notice. For present purposes, therefore, the Undersigned deems the allegations concerning training to be sufficient for purposes of evaluating the Complaint for facial plausibility.

But, during discovery, Plaintiff will need to *actually* establish, if it can, the existence of relevant policies and procedures. Her effort can be challenged through a summary judgment motion, of course. For now, though, the Undersigned considers the allegations about training available to assist Plaintiff in asserting, for pleadings purposes, the

requisite notice. If Carnival does not have those policies or procedures, or if they do not actually say what Plaintiff says they say, then the Court will (obviously) adopt a significantly different perspective about the allegations.

The Complaint also alleges that notice was sufficiently pled through violation of industry regulations. Plaintiff did not refer to these allegations in her response to the dismissal motion, even though Carnival included them in its arguments. Therefore, the Court deems these allegations to have been waived for purposes of evaluating whether Plaintiff adequately and plausibly alleged constructive notice. "Failure to respond to an argument may result in waiver." *W. 32nd/33rd Place Warehouse Condo. Ass'n, Inc. v. W. World Ins. Co.*, No. 22-CV-21408, 2023 WL 6317993, at *4 (S.D. Fla. Aug. 21, 2023) (citing *Five for Ent. S.A. v. Rodriguez*, No. 11-24142-CIV, 2013 WL 4433420, at *14 (S.D. Fla. Aug. 15, 2013) ("A failure to address issues in response to a motion is grounds for finding that the claims have been abandoned."); *Altare v. Vertical Reality MFG, Inc.*, No. 19-CV-21496, 2020 WL 209272, at *2 (S.D. Fla. Jan. 14, 2020) ("Plaintiff did not respond to this argument and, consequently, the Court deems any response waived.")).Meaning that here, Plaintiff will not be able establish notice of the alleged dangerous condition by pointing to a supposed violation of industry standards.

Carnival also contends that Plaintiff has not established how her proffered similar prior incidents put it on notice and how they have an "apparent connection" to the subject incident. *Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-CIV, 2019 WL 8895223

(S.D. Fla. Nov. 15, 2019). Below is a summary of Carnival's analysis supporting its view that the Complaint fails to plausibly and adequately allege the connection between the prior incidents and the one at issue:

Based on the very allegations in her own Complaint, Plaintiff's alleged incident occurred on "February 27, 2023," "on the carpeted ramp next to the glass door used to access Deck 10 from the interior of Deck 9," of the Carnival *Elation*. [ECF No. 1, ¶¶ 7-8]. According to Carnival, Plaintiff has failed to proffer sufficient allegations to demonstrate how these prior incidents have an apparent connection to Plaintiff's alleged incident. For each incident, Carnival argues, Plaintiff states in a vague and conclusory fashion that the individual "tripped and fell on an uneven and/or sloped common passenger walkway." [ECF No. 12, p. 7].

None of the prior incidents Plaintiff cites occurred on the Carnival *Elation*. None of those prior incidents even occurred on the same deck as Plaintiff's incident. They occurred five (5) to nine (9) years *before* Plaintiff's alleged incident. Thus, Carnival argues, that Plaintiff has provided no facts imputing notice on Carnival because she failed to demonstrate how the walkways involved in the prior incidents are in any way similar to the subject walkway. Notably, "there is no explanation as to how these incidents put Carnival on notice." *Id*. As such, Defendant asserts that the Complaint has not alleged sufficient factual allegations demonstrating how the listed prior incidents establish Carnival's notice.

14

Haggerty's response argues that the five prior incidents are eligible to generate notice. She says the "subject hazard is not a unique feature to a specific ship let alone that ship's class, but a hazard known to exist throughout the fleet." [ECF No. 14, p. 6]. But the Complaint itself does not exactly allege *that*. Instead, it alleges that Carnival documents prior incidents through, among other methods, "prior complaints made to guest services throughout its fleet." [ECF No. 1, ¶ 17]. That is quite different than alleging that the hazard at issue exists throughout the fleet.

Nevertheless, Plaintiff's reference to the five supposedly-similar prior incidents does allege that they all involved passengers who "tripped and fell on an uneven and/or sloped carpeted common passenger walkway." *Id.*

The Undersigned views *Cogburn v. Carnival Corp.*, No. 21-11579, 2022 WL 1215196, at *4 (11th Cir. Apr. 25, 2022) as helping Plaintiff clear the pleadings hurdle concerning the prior incident theory. In *Cogburn*, the Eleventh Circuit stated:

> With regard to the substantially-similar-incident requirement, we have explained that it "does not require identical circumstances[ ] and allows for some **play in the joints**." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) (emphasis supplied). In applying this standard, the relevant question is whether "the two incidents were similar enough to allow the jury to draw a reasonable inference" concerning the cruise ship operator's "ability to foresee" the incident at issue. *Id.* at 1288 (quoting *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 755 (11th Cir. 1985)).

2022 WL 1215196, at *4.

For pleadings purposes, these five prior incidents generate an adequate, plausible allegation concerning an effort to establish constructive notice through prior, similar

incidents. During discovery, Plaintiff may well uncover additional incidents involving passengers who tripped and fell on sloped common passenger walkways. Alternatively, she might not discover any additional prior incidents, and she could uncover evidence that the five prior incidents are *not* in fact sufficiently similar to help establish constructive notice. So the dismissal motion's argument that the prior incidents are insufficient should be rejected for *current* purposes, but Carnival may renew its argument at the summary judgment stage.

Therefore, by way of overall summary on the notice issue, the Undersigned recommends that Judge Williams **deny** Carnival's motion to dismiss on a purported failure to adequately and plausibly allege actual or constructive notice.

### *Negligent Training*

To state a claim of negligent training, Plaintiff must allege Defendant "was negligent in the implementation or operation of the training program and the negligence cause[d] [her] injury." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). Likewise, "it is well settled that general maritime law does not recognize a claim of negligence that is premised upon a company's *general* policies and operations." *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1304 (S.D. Fla. 2021) (emphasis added) (citing *Malley v. Royal Caribbean Cruises, Ltd.*, 713 F. App'x 905, 910 (11th Cir. 2017) ("No court has ever held that this claim [*i.e.*, failing to implement adequate risk management

procedures and the failure to implement safety standards] exists in federal admiralty law.")).

According to Carnival, the Complaint here does not specify which training program was supposedly negligent in implementing or operating, nor does it explain how Carnival's purported negligence in implementing or operating the training program caused harm to Plaintiff. *See, e.g., Doe v. NCL (Bahamas) Ltd.*, No. 18-20060-CIV, 2018 U.S. Dist. LEXIS 136480, 2018 WL 3848421, at *3 (S.D. Fla. Aug. 13, 2018) (granting motion to dismiss regarding negligent training claim). But Carnival's argument overlooks the specifics of the allegations:

> CCL provides and trains crew members tasked with inspection, cleaning and/or maintenance of its common walkway areas, and to warn passengers that its walkways may be uneven, sloped and/or have a change of incline and height.

> CCL's training programs are written within the company's training manuals (SMS Protocols) as well as in two-minute trainers, videos and presentations. These materials are generated, prepared, reviewed and/or otherwise controlled by CCL.

> CCL specifically trains crew members to place written warning signs, markers, verbal warnings and/or other indicators to warn passengers of its uneven and/or sloped walkways.

> CCL's training and procedures instruct crew members that its walkways, including walkway areas that can be uneven and/or sloped which can cause passengers to slip and/or trip and fall and stumble and/or lose balance and fall and get injured.

> CCL created this procedure for its crew because CCL knows that without verbal, written and/or visual warnings or cues passengers may not be able to appreciate the irregularities of its common walkways.

17

[ECF No. 1, ¶ 19.1].

Plaintiff highlights that "[w]ithin Count V itself, the Complaint lists ten different ways Carnival failed to implement and/or operate its training program." [ECF No. 14, p. 8 (citing ECF No. 1, ¶¶ 64(a)--(j))]. For example, it alleges that Defendant failed to "teach shipboard crew **how to inspect and maintain** the stairways and walkways used by guests to get to and from one deck to another"; failed to "teach crew **how frequently to inspect and maintain** the stairways and walkways used by guests to get to and from one deck to another"; failed to "teach shipboard crew how to **test, check and/or otherwise determine whether crew understood** how to inspect and maintain stairways and walkways used by guests to get to and from one deck to another in a safe condition"; failed to "teach shipboard crew **how to warn** guests about uneven and/or sloped walkways and the dangerousness of the uneven and/or sloped walkways and staircases used by guests to get to and from one decks to another." *Id*. at 8-9 (emphasis in original) (quoting ECF No. 1, ¶ 64).

Given our procedural posture (*i.e.*, evaluating whether the allegations are plausible and adequate), the Undersigned concludes that the Complaint passes muster on the negligent training claim. Depending on how Plaintiff develops that claim and what actual evidence supports it, her theory might yield a different result at the summary judgment stage.

Therefore, the Undersigned respectfully recommends that Judge Williams **deny** Carnival's motion to dismiss Count V (which *admittedly* is somewhat conclusory). If Carnival mounts a similar challenge in a summary judgment motion, then Plaintiff will likely need to put more meat on the bone.

<u>*Negligent Design Claim – Direct (Count VII)*</u>

Liability based on negligent design requires proof that the ship-owner or operator "actually created, participated in or approved" the alleged improper design. *Lemquist v. Carnival Corp.*, 2023 U.S. Dist. LEXIS 32032, at *12-13 (S.D. Fla. Feb. 27, 2023) (citing *Diczok v. Celebrity Cruises, Inc.*, 263 F. Supp. 3d 1261, 1264 (S.D. Fla. 2017) (the plaintiff "merely put forth evidence that Celebrity participated in the overall design of the ship, which was inadequate for a negligent design claim)). *see also Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir. 2012) (affirming summary judgment where plaintiff presented no evidence of the cruise line's actual involvement in the design); *Roberts v. Carnival Corp.*, No. 21-11792, 2022 WL 2188010 at *6-7 (11th Cir. June 17, 2022) (affirming summary judgment for cruise line operator because there was no record evidence establishing the cruise operator participated in, or approved of, the design).

In *Liles v. Carnival Corp. & PLC*, the court dismissed the plaintiff's negligent design claim because "the Amended Complaint [was] devoid of facts to support such a theory." 2023 U.S. Dist. LEXIS 1290, at * 7 (S.D. Fla. Jan. 4, 2023). Similar to here, the amended complaint in *Liles* alleged that the defendant selected, approved, and/or participated in

19

the design of the alleged dangerous condition. *Id*. at *6. However, United States District Court Judge Beth Bloom agreed with the defendant's argument that the plaintiff failed to state a claim. *Id*.

Here, Carnival contends that Count VII is but a plain recitation of the elements of a negligent design claim, supported solely by both conclusory and boilerplate allegations. As such, it argues that Count VII should be dismissed as it fails to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

But Plaintiff argues that the Complaint does not suffer from the failings of the allegations in *Lemquist* or *Liles.* Plaintiff's assessment on this point is correct: her Complaint contains more-specific allegations than the ones raised in *Lemquist* or *Liles.* For present purposes, and as noted earlier, the Undersigned takes the allegations to be true. Naturally, Plaintiff will have to provide actual evidence to support her allegations in a summary judgment forum and, if she clears that hurdle, then at trial. But the allegations, which the Undersigned quotes from below, are sufficient to allege a claim (and to distinguish the allegations from the inadequate ones in *Liles* and *Lemquist*).

The Complaint alleges that Defendant "chose to and/or approved to install common passenger walkways, including those which contain uneven and/or sloped areas throughout Carnival's fleet." *See* [ECF No. 1, ¶ 14]. Additionally, it also contends that Carnival "custom designed and custom built the CCL *Elation* to CCL's specifications" and "participated in and/or approved the design of the subject area including the sloped

uneven area within the walkway" and "the selection of materials of the area including the subject walkway". *See id*. at ¶ 83. Moreover, it claims that "CCL inspected, chose and/or otherwise approved the manner in which these areas are built, repaired, replaced and/or otherwise constructed." *See id*. at ¶ 18.

The Complaint also alleges that Carnival "continues to repair, modify and/or install the same and/or similar sloped and/or uneven walkways on all its ships, including the CCL Elation." *See id*. at ¶ 83. Thus, Carnival allegedly had "the right and opportunity to change, repair, modify and/or otherwise eliminate the dangerous condition which caused this incident long before it happened [.]". *See id*. at ¶ 18.

These allegations are substantially more detailed, and less conclusory, than the ones at issue in the cases Carnival relies upon its dismissal motion. The Undersigned therefore recommends that Judge Williams **deny** this portion of Carnival's motion concerning Count VII.

### *Negligent Design – Vicarious (Count VIII)*

Carnival proclaims, in an argument section heading, that "there is not a claim of vicarious liability for negligent design." [ECF No. 12, p. 12]. Its Motion relies on *Barksdale-Starkes v. Carnival Corp.*, where the district court adopted Chief Magistrate Judge Edwin Torres' report and recommendations in which he advocated that a claim for vicarious liability for negligent design should be dismissed when a plaintiff fails to articulate why such a theory of liability should be created. *See Barksdale-Starkes v. Carnival Corp.*, No. 20-

22204-CIV, 2020 WL 7079159, at *5 (S.D. Fla. Oct. 27, 2020) ("Because [p]laintiff inaccurately claims the law supports her vicarious liability claim against Carnival, and she does not articulate why we should create such a theory of liability, Defendants' motion to dismiss Count II should be GRANTED."), *report and recommendation adopted sub nom. Barksdale-Starkes v. Carnival Corps.*, No. 20-22204-CIV, 2020 WL 7074637 (S.D. Fla. Dec. 3, 2020).

But this rule is outdated, as it conflicts with our circuit's opinion in *Yusko* where the court clarified decades' worth of case law involving cruise ship litigation, and held that vicarious liability could be imposed against "an otherwise non-faulty employer," ship owner or cruise operator "for the negligent acts of that employee acting within the scope of employment." 4 F.4th at 1169. As succinctly summarized by the *Yusko* Court, "[i]n other words, an employer can be held liable under a vicarious liability theory even if it has not violated any duty at all." *Id.*

*Yusko* did not involve a claim that a cruise ship operator's employment negligently *designed* a ship or a part of the ship (as it concerned a passenger who fell during an onboard dance competition because of the alleged negligence of a professional dancer and cruise ship employee). But there is no legal reason to carve out vicarious claims for an employee's alleged negligence in designing the ship (or a part of it). Carnival has not called our attention to any post-*Yusko* case law which would somehow exempt vicarious claims for negligent design from fundamental principles of vicarious liability for other

22

alleged negligence (such as negligently releasing a passenger's hand during a dance move, causing her to fall backward and hit her head on the deck -- *i.e.*, the scenario alleged in *Yusko*).

Therefore, our next task is to assess the allegations and determine whether they adequately and plausibly allege a vicarious liability claim for negligent design.

The Complaint alleges that Carnival employs personnel both onboard its ships and shoreside who are responsible for the design, construction and selection of materials onboard Carnival's ships including the *Elation*. *See* [ECF No. 1, ¶¶ 92-93]. This includes personnel from Carnival's New Build and Refurbishment departments. *See id.* at ¶ 94. These individuals "plan, organize, operate and/or control the design, construction, selection of materials, repairs, redesign, upgrades, updates and/or modifications to Carnival's ships including the area where the Plaintiff tripped and fell onboard the *Elation*." *Id.* at ¶¶ 94-97. However, Carnival's employees allegedly breached their duties of care when they approved, designed, constructed and/or selected the materials for the sloped, uneven walkway which caused the Plaintiff to trip, fall and sustain injuries. *See id.* at ¶¶ 100-102.

These allegations are sufficient to state a vicarious liability claim against Carnival for negligent design. Haggerty will need to pinpoint evidence sufficient to establish that Carnival's employees negligently designed the ship or negligently approved of the design in order to avoid an adverse summary judgment ruling or trial verdict. But, for

pleadings purposes, these allegations are sufficient. *See generally Hunter v. Carnival Corp.*, 609 F. Supp. 3d 1305, 1310 (S.D. Fla. 2022).

Carnival's dismissal motion criticizes the vicarious liability counts for failing to specifically identify by name the particular employees whose negligence caused Plaintiff's injuries. But the Undersigned knows of no binding law clearly requiring this level of specificity in the Complaint for pleadings sufficiency purposes. In fact, one district court recently rejected the notion urged by Carnival here:

> [T]here is no requirement in the law that she do so, and it would seem **fundamentally unfair** to require the Plaintiff to remember the names of each of the crewmembers involved in the incident simply to file a complaint. There were, undoubtedly, specific crewmembers involved in the incident that the Plaintiff alleges. The Plaintiff's allegations are not general allegations of failure to maintain a safe premises.

*Davis v. Carnival Corp.*, No. 22-cv-24109, 2023 WL 5955700, at *4 (S.D. Fla. July 31, 2023) (emphasis added) (quoting *McLean v. Carnival Corp.*, No. 22-23187, 2023 WL 372061, at *3 (S.D. Fla. Jan. 24, 2023)) (concluding that the complaint "possesses enough heft" to "suggest a plausible entitlement to relief for claims of vicarious liability")); *see also Hunter*, 609 F. Supp. 3d. 1305, 1311 n.3 (explaining that the allegations would enable defendant to identify the allegedly negligent employee during discovery).[3]

---

[3]      Carnival cites *Holland,* 50 F.4th at 1094, for its position that a plaintiff alleging vicarious liability must identify by name the crewmembers who were acting in the course and scope of their duties when they performed a negligent act. [ECF No. 12, p. 15]. The Undersigned deems that to be a stretch of the relevant holding.

Framed by this analysis, the Undersigned respectfully recommends that Judge Williams **deny** this portion of Defendant's motion concerning Count VIII's vicarious liability claim for negligent design.

<u>*Challenges to Other Vicarious Liability Claims (Counts II, IV, and VI)*</u>

Plaintiff asserts vicarious liability claims for negligent maintenance, negligent failure to warn and negligent training of personnel (Counts II, IV, and VI), but Carnival

---

The *Holland* Court highlighted that the amended complaint denominated each count as a vicarious liability claim but did not include allegations "that would lead one to understand his claims as seeking to impose liability on an otherwise nonfaulty Carnival for an employee's negligence." 50 F.4th at 1094. Likewise, the court emphasized that the amended complaint alleged that Carnival had actual and/or constructive notice of the dangerous condition on the glass staircase – allegations which are not relevant to a vicarious liability claim (but are instead relevant to a claim based on Carnival's alleged direct liability for its own negligence). The *Holland* Court ended this portion of its analysis by concluding that "despite what he has called his claims, Holland seeks to hold Carnival directly liable for its own negligence and not vicariously liable for a specific employee's negligence." *Id.* at 1095.

Given this background, the *Holland* Court's statement about the failure to identify specific employees is more a criticism of the overall sloppiness and inconsistencies in the amended complaint than an unequivocal requirement that a plaintiff must pinpoint an employee by name. The specific remark at issue is: "First, Holland did not identify any specific crewmember whose negligence caused Holland's injury, much less a specific crewmember whose negligence occurred while acting within the scope of his employment—essential parts of any claim seeking to impose vicarious liability on an employer for an employee's negligence." *Id.* at 1094. But it is unclear whether the words "essential parts" concern only the issue of not naming an employee or whether they encompass all the deficiencies outlined in the analysis. Finally, several post-*Holland* cases hold that it is not necessary to name the employee (if the complaint alleges that the employee was acting in the course and scope of his duties, breached his duty to act reasonably and for the passenger's safety and that Carnival was vicariously liable even if it was fault-free.). (See *Davis,* 2023 WL 5955700, at *4, and *McLean,* 2023 WL 372061, at *3).

contends they are "nothing more than disguised claims sounding in direct liability seeking to circumvent the notice requirement established by the Eleventh Circuit." [ECF No. 12, p. 13].

The Undersigned is not persuaded.

First, Plaintiff may base her claims on both theories of direct and vicarious liability. *Hunter*, 609 F. Supp. 3d. at 1310. *Hunter* reiterates the Eleventh Circuit's holding in *Yusko* that "[a] plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability or **both**." *Id.* (emphasis added).

Second, the cases Carnival rely on are inapplicable for the argument here that Plaintiff is seeking to avoid the notice requirement. For example, in *Britt v. Carnival Corp.,* 580 F. Supp. 3d 1211, 1215 (S.D. Fla. 2021), the trial judge dismissed the vicarious liability count because it did not allege the defendant's notice of the dangerous condition, and the court declined to excuse the notice requirement. But the Complaint here *does* include notice allegations in its vicarious liability counts. The notice allegations are in paragraphs 17-20, and the vicarious liability counts all adopt and reallege the allegations made in paragraphs 1-20, which obviously include the notice allegations in the three paragraphs noted above.

Third, although Plaintiff may not ultimately prove the negligence of a crewmember (or crewmembers), Plaintiff is permitted to at least assert the vicarious liability claims if those counts are otherwise adequate. *See Hunter*, 609 F. Supp. 3d. at 1310.

Fourth, this flexibility exists even if there is an overlap between the direct and vicarious liability claims (as *Yusko* expressly pointed out that both types of claims could be brought in the same lawsuit).

Fifth, the Complaint includes allegations about the crewmembers' negligence in all of the vicarious liability counts. For example, in the vicarious liability theory of failure to warn, Plaintiff alleges that the crew assigned to warn guests of tripping hazards, including the subject area, failed to do so, and this failure caused her to trip and fall. ¶ 52-53.

## IV.  Conclusion

For the above-mentioned reasons, the Undersigned **respectfully recommends** that the District Court **deny** Defendant's Motion to Dismiss.

## V.  Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See*

28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

   **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, June 25, 2024.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Kathleen M. Williams
All Counsel of Record

28